Mr. Eisenberg, whenever you're ready. Yes, ma'am. I just want to point out that the clock is not set properly. No, it is. Is it not? No, ma'am. I set 4-11-4. And it starts at 15. We run the clock. That's why your light comes out. Your total is 15. Oh, excuse me. Your total is 15. It's been a couple months since I've been here last.    Yes, ma'am. I just want to point out that the clock is not set properly. No, it is. Is it not? No, ma'am. I'm here to plead that his case should not have been dismissed on his 60B motion. That in particular, as I know opposing counsel to talk about is that his 60B motion did not fit within the traditional realm of what 60B motions tend to come about. However, under 60B-6, we have other reasons that justify relief. And if I may be allowed, that will be the thumb on the scale for veterans' claims, which I'd like to discuss a little bit later, if I may, because the prong or the major prong of our case is when does first accrual begin to... And that was an issue decided in the earlier order. Yes, ma'am. So how is that issue preserved for appeal when you didn't file an appeal on that issue following the first order? Because the 60B was filed in response to the final order. It doesn't toll the time period for appealing those issues. No, ma'am. But we do believe that the 60 rule allows us to present this case for reconsideration in order... Because the court does have other means of remedies available to itself in order to assist the applicant or, in this case, the plaintiff or the appellant, as you said. I'm sorry. I don't understand. The 60B... The Supreme Court has been crystal clear that a 60B motion cannot be sort of a substitute for a failure to have timely appealed. You can't use the vehicle of the 60B to say, aha, I didn't appeal in time, but now I'll file a motion for reconsideration on the same issues, and then I get to appeal the merit of those underlying issues on appeal. So I feel like that's exactly what you're trying to do with the first accrual in 2501. It's not that you have a bad argument, it's just that it's not fairly before us. I don't see how it's part of the 60B. I understand your Henderson argument, and I understand why that's part of your 60B argument. Yes, ma'am. But I don't at all understand how the first accrual issue is fairly part of the 60B mistake that you accuse the District Court of having made. But the District Court erred because they misapplied the law as it dealt with, as we've made our arguments under Henderson. And how it's been... I don't see how your argument about the Federal Circuit should take the accrual issue in bank because first accrual shouldn't be the Board of Correction officer decision might not be saying that right, but am I close? Well, actually, if I may, in this little history, we're going back roughly 15 years from the time of the lawsuit, from when the first Board of Corrections made their decision, which was within six years of my client's discharge. However, given that Henderson was being propagated at the time of the first decision, we had this day, they said that this has nothing to do with this case at hand, of course we disagree and not only will I argue later if given the opportunity, but also it's well written within our briefs, that they had made a mistake and that we felt that the 60 motion or the 60B motion was the proper course for them to correct the mistake. It's a mistake of law though, isn't it? It's not the sort of thing that 60B is designed to deal with. But it wasn't simply a mistake of law, it was simply ignoring the law. Well, wouldn't that be a mistake of law to ignore the law? Perhaps. Well, but also even, your argument as I understand it is not that Henderson results in what should be a different rule regarding first accrual. Am I wrong about that? Is your argument that the Supreme Court's Henderson decision is what should convince the in-bank federal circuit to modify its rule on first accrual? Is that your argument? The Hedgeson case set forth a framework of the exceptions, specifically for Sand, that if I may, it set forth the framework or the test, if you will, of determining that Congress did not attach jurisdictional consequences to limitations, to jurisdictional limitations in situations like this that deal with veterans and veterans' benefits. In particular, the test stated one, that the fact of the statute of limitations that issues part of a unique administrative scheme that puts a fund on the scale for veterans throughout the review process. Just like in the VA process, the BCMR is there to assist the veterans. Can I just, I think I get what you're saying. Just step back. Sure. Is this, is your exclusive argument that the statute of limitations should not apply here because we are compelled to follow Henderson, which says you can have equitable tolling and so forth, with respect to the statute of limitations? Is that what this case is about? Not the 6TB, but the overall genesis of the case, yes. Because it too sets forth, I mean, again, this is... There are other cases and we can't possibly do that, either as a full court or arguably even as an en banc court because we've got J.R. Sand and other cases which demonstrate why this particular statute of limitations is different and distinguishable from the one at issue in Henderson, right? No. Okay. Why not? Because Sand does not apply here. Because? Three reasons, if I may. Forgive me, I lost my thought. Because Sand is completely different than the case at hand. Sand carved out an exception that ultimately showed that case law establishes that there is a rebuttable presumption, that there is a rebuttable presumption, that what's available in private suits is also available in government suits. Sand was a contest of the constitutional challenge to the government activities on mining property. This is an administrative board action, which obviously the two are completely separate. But Sand is interpreting Section 2501 and that's the section at issue in your case, right? 2501 is the issue at our case. However, the way Sand was applied in that case is completely different than our case. Again, in Sand they were challenging a constitutional action by the government, whether the government was acting constitutionally and dealing with mines versus a claim processing deadline with regards to first accrual. Second, Sand dealt with a waiver. We're not dealing with a waiver. We're dealing with construction of its terms. And given that a long line of decisions undisturbed by Congress, an exception was carved out. Congress hasn't intervened. Congress hasn't intervened with Henderson, which is completely distinct from Sand. What exception was carved out? The Supreme Court said expressly 2501 was jurisdictional and that there is no equitable tolling from it. So this is a case about 2501. I just don't understand. When we compare that with Irwin, because Irwin did create an exception for that statute with regards to EEO matters and constitutional matters. How is it that we can have an exception carved out by Irwin and not have an exception carved out for the veterans who actually protect those liberties sought by the EEO claimants at the time? So your argument is that because veterans are involved, and there's a sum on the scale for veterans, we're going to create an equitable tolling regime under 2501? Not precisely, because we're not looking at... I'm just trying to understand. Oh, no, no, no. I apologize. I'm just trying to get my hands around this. I apologize. I have my thought. Because in Henderson, we're not looking at a jurisdictional issue. And that created the exception. Well, Henderson was about a VA statute of limitations. Right. Yes, ma'am. Okay. So this is dealing with another statute of limitations, but again, dealing with the veteran. Giving the veteran due difference. So because this happens to be a veteran in this particular 2501 case... Yes, ma'am. That's the reason that you think a whole different scheme ought to apply? Absolutely. Because, again, the courts and our Supreme Court has given deference to the veterans time and time again. And again, Congress has never intervened and said, you know, the Supreme Court or the courts are overreaching in giving that little leniency to the veteran in dealing with their cases. Well, you're getting close to your rebellion. You want to reserve the remaining... I'm going to reserve the remainder of my time, unless there's any questions by the court. Okay. Why don't we hear from the government, and then we'll hear again from you. Mr. Adolczyk? Good morning, Your Honor. May it please the court. As the previous discussion made clear, this case has a number of procedural defects associated with it. First of which is that this appeal is not timely. Mr. Fulbright did not file a notice of appeal until seven months after the February 2011 judgment became final. And every single argument made by Mr. Fulbright in this appeal could have and should have been made in a timely appeal from that original judgment. For this reason, the court should dismiss the entire appeal because it was initiated seven months too late. Now, the only possible issue before the court is the trial court's September 2011 order that denied post-judgment relief. And, of course, Rule 60B governs post-judgment motions. Yet, Mr. Fulbright makes no argument either that the requirements of Rule 60B are met in this case or that the trial court somehow abused its discretion in denying relief from the judgment. And for this... What he's saying is that we should bend 60B because he's better. Yes, Your Honor, that is the argument, but it is a black-letter rule from the Supreme Court that a change in the law is no ground for post-judgment relief in the context of Rule 60B. That's the Ackerman case cited in the papers. The only argument made by Mr. Fulbright is that Henderson changed the law, but as Judge Moore, you pointed out earlier, Henderson involved an entirely different statute of limitations, an entirely different statutory scheme, and it has no application in this case. As for whether John R. Sanding Gravel has any distinguishable characteristics, this court held in 2008 in the Young case that the John R. Sanding Gravel decision that Section 2501 is jurisdictional, that has equal application in the context of military pay claims. What about Irwin? Your friend raised the Irwin case. Irwin was a Civil Rights Act case, also not a case involving Section 2501. Also, as far as whether the court should consider the matter en banc, I should point out that six weeks ago, the court recently denied an en banc petition filed by the Petitioner's Council, Mr. Heisenberg, on this very same issue in Palacios v. United States. It was case number 2012-5028. The en banc petition was denied on June 22, 2012. What relevance do you think that has? The only point, Your Honor, is that there's no merit to the Henderson argument and it doesn't warrant consideration by the court because even if the... This panel can't decide whether or not to reject or not reject a petition for rehearing en banc because that's forthcoming in this case, right? Indeed. And even if Mr. Fulbright were correct about Henderson changing the law, it would not relieve him from the failure to appeal from the original judgment. He's essentially seeking an en banc... Why? Why? His original decision came February 2011. Henderson was decided in March 2011. Why can't he argue under 60b-5 that there was an intervening change in the law that makes this case something worthy of reconsidering? I mean, this is... That's all we're deciding, right? We're only deciding 60b. We're not deciding all the 2501 stuff he argues that's not fairly core. So we're only deciding this Henderson. But why isn't that at least... I mean, maybe it's a wrong argument, but at least a valid argument regarding whether the district court was correct in rejecting his 60b argument? Well, there are two elements to the answer. The first is that, as Your Honor points out, Henderson was decided in March of 2011 before the time for appealing the original judgment had run. And so there's no dispute that Mr. Fulbright could have and should have appealed from the original judgment, and he could have made every argument that he's made here concerning Henderson or otherwise in that original appeal. As for 60b... And could he have also done that via a motion to reconsider before the district court? Your Honor, Mr. Fulbright did not make a Rule 59 motion for reconsideration in the trial court. And as for Rule 60b-5 that Your Honor mentioned, the provision in Rule 60b-5 that is sometimes invoked in the context of changes in the law pertains to the continued effect of permanent injunctions and whether that remains equitable in light of changes in the law. That has no application here, and Mr. Fulbright has not seriously relied on Rule 60b-5 in this case. In essence, what Mr. Fulbright is doing is he's seeking an advisory opinion in this case regarding an alleged change in the law, even though Rule 60b doesn't provide for post-judgment relief when there's been a change in the law. If I could borrow from the discussion earlier this morning, it's a finger flap in the wrong place. It serves no useful purpose. In sum, Mr. Fulbright's arguments in this appeal are not timely, they're not properly presented, and do not have any merit. The appeal should be dismissed. Thank you. Thank you, Your Honor. Your Honor, if I may address a couple of points. I respect that counsel is trying to be humorous with a finger flapping in the air. Admittedly, I wasn't here to hear that. However, unfortunately, neither was my client. I think on behalf of him and veterans, they would not be too keen to think that their issue is being finger flapped. They take things very seriously. Just so you know, the finger flap case involved like a bazillion dollars. I think it was actually a pretty serious case. It's like every single soda can sold in a 12-pack in the world. I understand. Just so you don't think he was belittling your client. I didn't think he was, but I also want to make sure that my client and the other veterans who I deal with many a lot, I know how they tend to take things. I'm not attacking anyone, but I just think that needs to be stated. Going back to your discussion regarding 60 v. 5, this clearly is an equity issue before the court. Many veterans are trying to get what they are entitled to through the Boards of Corrections and military records. They only find out way after the fact as they are dealing with their veterans' claims that actually they may have been discharged improperly without going into great depth as to whether or not a VA claim is binding on a VCMR action and vis-a-vis. It does raise questions of concern given that sometimes they are clearly in direct conflict of one another. Going more toward the legal arguments at hand today, one could argue that there wasn't a change of law by Henderson but perhaps a better explanation of the law as Congress has had clear intent for nearly six decades as to giving the benefit of the doubt the thumb on the scale for the veteran. If there's not a change in the law, then it seems kind of strange they were reversing it. Well, here's the odd thing. There is four different interpretations as to when first accrual occurs amongst the circuits. Now, granted, if Congress doesn't act, typically they're okay with whatever that prior legal decision was. However, in this case, given that there are four distinct interpretations, and this circuit happens to be the most strict of first accruals, I don't believe that Congress has given its blessing on this. It's in part why an en banc proceeding may be necessary given the fact that, although this court may be overturning its own prior precedent, it's staying within the lines created by our Supreme Court. But they're basically synonymous. 2401 is synonymous with 2501. It just happens to be the one that's set for this particular circuit. This is also an Article I court versus the other Article III courts. So I believe the 2501 was, correct me if I'm wrong, delineating for the Article I court, not the Article III courts. And again, in Article I court, this is not supposed to be an adversarial action by the veteran when he goes before the Board of Corrections and Military Records, as similarly as he or she is going to the VA. This is not a confrontational process. Here, we're trying to help the veteran, and ideally, he or she would be entitled to the same due process that any other red-blooded American would be entitled to as well. Well, but actually you're asking for a totally different due process than any other red-blooded American. Your argument, as I understand it, is that veterans should have a different standard applied to them by virtue of the service they gave to our country. And so I think that you're arguing just the opposite of what the bulk of your argument seems to be. Well, I guess in part what I'm arguing is that the 2501 should be liberally construed as the 2401 has been in the past. I see that my time is up, and I would ask that we rest on our briefs and our arguments. Thank you. We thank both counsel. The case is submitted.